Good afternoon. May it please the Court. My name is Jacob Hallman. I am counsel for the appellant. I would like to reserve three minutes for rebuttal. The issue on appeal today concerns whether the bankruptcy appellate panel for the Ninth Circuit erred when it held that the provisions under 11 U.S.C. 522P were not implicated based upon the transfer of title to real property from a limited liability company to a trust within 1,250 days prior to appellee's bankruptcy filing. The bankruptcy appellate panel based its decision on the fact that appellee maintained a sufficient interest in the property after title was transferred to the limited liability company such that there was not an acquisition of an interest within the meaning of Section 522P. The bankruptcy appellate panel further noted that appellee would have had the ability to claim a homestead exemption in the real property. Is that an issue still or is it just the amount that was available? My understanding is that the question is the amount, not whether it was available. Is that right? Your Honor, I think that the issue as to whether or not the debtor had the ability to claim an exemption in the property while it was owned by a limited liability company is still at issue. That's one of the bases for the trustee's argument that the concerns underlying the enactment of 522P are implicated in this case. So basically as I understand it, everybody agrees that the homestead exemption is available when it's held in trust, but then the question is really about the LLC. That's correct, Your Honor. And the reason why the parties are in agreement regarding the trust is because there's this explicit provision under NRS 115-020, subsection 5. So the question of Nevada law, if we get to it, is whether you can claim a homestead exemption when the property is held by an LLC. That's correct, Your Honor. And the appellant has advanced two primary arguments in support of her position that the bankruptcy appellate panel aired. The first is that under Delaware law, which is the state of the incorporation of the limited liability company at issue here. Would we have to certify this question to the Nevada courts? Your Honor, it is a question of Nevada law. However, it's the appellant's position that based upon the Nevada Supreme Court's decision in Savage v. Pearson, that it's clear on its face that an individual or a member of a limited liability company cannot claim an exemption in company property. I'm sorry. I didn't mean to interrupt your answer. I thought you were done. And so do you agree with that or not? I agree that if the court believes that the analysis under Savage v. Pearson is not clear, that ultimately this is a question that is premised on Nevada law. And the reason why the appellant's position, why Savage v. Pearson stands for that proposition is largely because that was a question that was certified to the Nevada Supreme Court from the bankruptcy court as to whether or not a tenant could claim a homestead exemption in a security deposit. In analyzing the issue, the Nevada Supreme Court held that the definition of equity in the Nevada Homestead Statute contemplates more than a general interest or a general right of possession. Rather, it contemplates ownership. Now, with that... So do you dispute that? I'm trying to figure out and understand what your position is here. Well, I'm trying to clarify that based on that holding from the Nevada Supreme Court stating that ownership interest is required in order to claim a homestead exemption. If we take that analysis and look at the Delaware statutes considering limited liability law that specifically provide that a membership interest is personal property, and I quote, a member has no specific interest in limited liability company property. And that's 6 Delaware Code 18-701. So if we take the Nevada Supreme Court's holding that an ownership interest is required and look at the Delaware statute governing limited liability companies, it's clear that at the time this property was owned by the limited liability company, the data appellee as a member had no specific interest in the underlying property. As I understood the MAPS decision, they were, at least in part, simply interpreting federal law, specifically 522P. And as I understood them to be saying that your client didn't acquire any amount of interest in the property with these various changes of format and that he had retained or he and his wife had retained basically the same equity all throughout, regardless of these different changes of format. And if that's true, what difference does it make whether the homestead exemption applies or doesn't apply? Well, I think the implication concerning the homestead exemption has to do with the concerns with Section 522P, namely that it was enacted to prevent the conversion of non-exempt property to exempt property within it. I understand why it was passed, I think, from reading it, but I guess I'm asking a slightly different question. If all these changes of format, because they lived in this house for a long time, this is not one of those things where they went out and purchased some, you know, $15 million property to, you know, skate by. They owned this for a long, long time in various forms. They made the payments on it, it was always their home, and for, we don't know the reasons, I presume for some tax reasons or something, it kept changing format, but basically it was always their home on which they were paying the payments. And I understood the MAP to be saying, listen, when you changed forms, you didn't acquire any amount of interest, you just changed forms. And so that's, under the federal statute, that just doesn't apply. To answer that question, Your Honor, I think the prior decision that the Bankruptcy Appellate Panel rendered on this issue, their current decision conflicts with that, and that is namely that it's the appellant's position that these transfers do have an impact, that they're not just forms. Yes, but regardless of whether the MAP had an inconsistent decision, if this one is correct, then we have to affirm it. If the other one is incorrect, that's interesting, but not in front of us. That's correct, Your Honor. I think, though, in analyzing this, the decision that I'm referencing is Inmate Quicken. And in that case, the issue that was before the Court was whether or not a debtor could avoid a lien under Section 522F, which is a different subsection of the same statute at issue in this case. And the facts of that case involved a creditor that obtained the judgment against the debtor. That judgment was then recorded against the primary residence of the debtor. The debtor then transferred his interest to his limited liability company, and then that interest was then transferred back to him within the 1,215-day period preceding his bankruptcy case. The debtor then sought to avoid that lien under Section 522F as impairing his homestead exemption. And the Bankruptcy Appellate Panel, in interpreting case law on the issue governing when a debtor can avoid a judicial lien under 522F, the crucial determination was, did the debtor acquire his or her interest in the property prior to the recording of the lien? And they held that the transfer from the property, from the debtor, to the LLC exterminated his prior interest, and that it was a new interest when it was acquired, when it was transferred back to him. But is that, that's why I'm asking whether we even have to get into the homestead exemption, because as I understood it, that was about the homestead exemption. And I understood the BAP here, at least in part, to be walking around that question and just saying that in, under the facts of this case, where the people had just lived in the house forever and just kind of kept shifting formats, that they didn't, by doing so, acquire any amount of new interest or equity of any sort. And I guess what I don't understand is why that's wrong. Well, Your Honor, and I think that the crucial point that the appellant was trying to get across was that this transfer was important, because had the property remained in the name of the limited liability company at the time of Appelli's bankruptcy case, there is authority in Nevada, under B&M Land, that held that the trustee could stand into the shoes of the member and liquidate that property. And so it's the trustee's, as the appellant's argument, and in this case, this transfer, the effect of it was the conversion of non-exempt property to exempt property and wasn't prejudiced creditors by virtue of that transfer. Because had it not occurred, the trustee would have been able to liquidate this property without concern for Appelli's homestead exemption. Let me try asking a little bit differently. I mean, because I think we all agree that Section 522P only imposes a limit on the amount of interest acquired 1,215 days before filing for bankruptcy, correct? That's correct, Your Honor. All right. So what, in your view, was the amount of interest Mr. Caldwell acquired within that time period? It's the trustee's position that, since under Delaware law, the member does not hold a direct interest in company property, the debtor acquired his entire interest when the property was transferred back. So that there's not a concern over analyzing the fair market value of the property at the time that the transfer was made to him. Rather, he did not hold an interest in the underlying property. But isn't Enri Green instructive here? I mean, it says, or it seems to say in Enri Green that a homestead is not a property interest but a legal classification. So if you're pointing toward, you know, saying the homestead is a property interest, doesn't Green inform us otherwise? I agree with the Court in the sense that a homestead exemption under Nevada law is not in and of itself a property interest. But I think the facts of Green are distinguishable in the sense that the debtor at issue in that case had owned the vacant property for an extended period of time well outside the 1,215-day period prior to his bankruptcy case. It was owned in his own name. Within the 1,215 days, he simply moved on to the property and recorded a homestead exemption. And in that case, this Court stated that the more plausible interpretation of the contemplated ownership, the acquisition of ownership in real property. And the transfer at issue here is different because prior... Are you focusing on the legal title? Is that what you're saying? That's correct, Your Honor. I think that in this case, we not only, we had the transfer... But does that carry any additional monetary value? I think that it carries additional weight in the implications on appellees. Well, statute says amount. There has to be an amount that is acquired and they've lived there for about 20 years or something like that, 23 years at this point, I think. So what's new in terms of value? Well, Your Honor, it's from the trust, from appellate's perspective, it's... She does not dispute that the appellee in this case has, in some form or fact, that he initially acquired the property well before his bankruptcy case. However, the transfer at issue when that property was transferred to his limited liability company, arguably, I believe he mentioned in his declaration, for probate and estate planning purposes, he did that for a specific reason. And that distinguished his prior interest in the property. You still haven't answered the question of what additional amount of interest was acquired in that. Your Honor, it's appellant's position that he individually did not held any interest in the property because his membership interest only constituted personal property and it only entitled him to a share of the profits and no specific interest in the underlying property. If that's true, how was he able to transfer it to, in and out of a limited liability, I mean, into and out of his own personal account if he didn't have a property interest to begin with? Well, if he was acting as the managing member of the limited liability company and was acting in that capacity, then he could make that transfer. But isn't the whole purpose here, I mean, 522 is to someone to put all this extra money in that time period into the house and to avoid them being able to use that late, I mean, as bankruptcy using that as a way to prevent people from getting to it. That didn't really happen here, did it? No, there's, the appellant is not arguing that there was. For the reasons I think that Judge Graber's been asking about, I mean, they've had this property, they've been making their mortgage payments, it's undisputed. I don't think you all challenge that. So I'm trying to figure out how this comes in under that and why you're pursuing it in that way because it's not really going counter to the purpose of 522P. Well, I think to answer your question, Your Honor, in terms of going counter to Section 522P, under the case that was cited earlier, B&M Land, the transfer to the LLC, and had it remained that way on appellee's bankruptcy filing, the trustee could have liquidated that property for the benefit of creditors. At that time, it was non-exempt in the eyes of appellant. And so when the property was then transferred back within this set period of time, that was to the detriment of the creditors. So you're saying that if I understand the trustee's argument, then it is that the entire amount of the value of the property or the equity in the property transferred back. That's correct, Your Honor. It's as if they had nothing at all, no equitable interest while it was in the LLC that consisted only of them. That's correct, Your Honor. That's the trustee's position, that under Delaware law, since their interest was specifically personal property, the transfer back to them as trustees implicated that provision, and they then reacquired their interest in the property. Okay, I think I understand your position. You've exceeded your time, but we asked a lot of questions, so you may have some rebuttal time. Thank you, Your Honor. And we will hear from, I have your name here, Mr. Zerzo. Yes, ma'am. Good afternoon. May it please the Court. My name is Matthew Zerzo. I am counsel to the appellee, Mr. Caldwell. Your Honor, the BAP's analysis was sound and should be adopted by this 522P, and what it means, I would direct you back to the statutory text. And in Nevada, we have opted out of the federal exemptions, and the statute under 522P reads, as a result of electing, in this case, the debtor did elect to not use the federal exemptions, but of course use the Nevada state exemptions, to exempt property under state or local law. A debtor may not exempt any amount of the interest that was acquired. Well, interest in interest in the property, which is, I believe, what the trustee is saying, or interest in the exemption itself. And I would say to you that interest in what may be, in part, an answer to Your Honor's question. It's an interest, as the BAP found, in the exemption. Ultimately, the trustee is arguing that the debtor acquired an interest in the property when it was conveyed from Caldwell Investments, the LLC, to the Caldwell Trust. The BAP, of course, looked to the statutory cap under 522P and said whether it applies depends on whether the debtor acquired an interest within the 1,215 days under 522P. The BAP, of course, said we must look to Nevada state law to determine the applicability of the exemption. Again, getting back to the point of you say the BAP was correct and we have to look at Nevada law. Do we need to certify this to the Nevada court? Your Honor, I do believe you can, under the Green case, which is, of course, previous Ninth Circuit authority, although different facts, I don't believe a certification is needed. I do believe that you could decide it strictly on the 522P grounds that nothing new was actually acquired. No interest was actually acquired within the 1,215 day statutory reachback period. I think the BAP went a more circuitous way delving into the intricacies of, and frankly, undefined nature, perhaps, of Nevada exemption law, but only get to the same place that this honorable court did in Green, which basically, of course, it was a different situation. In that case, the property was clearly owned outside of the 1,215 day period, and it was the mere act of recording the homestead declaration, which in Nevada is a way to perfect the entitlement to the homestead, but the actual the ability to exempt always existed even outside of the 1,215 day period. But the trustee does have an interesting argument in pointing to the Nevada legislature and saying that if it intended to permit an LLC member from claiming a homestead and real properly held in an LLC, it would have done the same thing that it did with the trust and trustees, and they didn't do that here. Well, as the BAP found, it is certainly true there isn't a specific statute with respect to LLCs or corporations or LLPs or any of the... So what are we to make of that? I mean, they know how to do this, and they chose not to do it. They know how to do it in the specific context of a trust, but there are many other numbers of artificial entities. And I think you just have to return to the BAP's decision is the best answer to Your Honor's question, which is that you cannot draw from the action with respect to one type of entity any conclusion that they did not mean to preclude that from other types of entities. And by way of example, as the BAP observed, NRS 21090, which is the general exemption statute, does not in any way limit the entitlement to claim homestead exemption to fee title ownership, nor does NRS Chapter 115, which also complements the exemption statute and also is the entitlement to or the ability to record the homestead declaration. So in the absence of any specification in those very specific on-point statutes, where you would expect to find a limitation on the type of property interest that a debtor may hold and on which it could The limited guidance, unfortunately, the Nevada Supreme Court has provided in the Savage v. Pearson case, which was, of course, a month-to-month tenancy. It was probably the most tenuous interest. We find ourselves in this appeal today somewhere between the Savage v. Pearson issue of a mere leasehold, which was not sufficient, and absolute fee title ownership. Fee title ownership is not expressly required in either NRS 21090 or in NRS Chapter 115. And in the absence of that, as well as the language in NRS 115 that discusses the concept of a householder, which the Nevada Supreme Court has found does not require fee title ownership, but indeed only involves possession and occupancy, that that is at a minimum what the debtors, the debtor in this case, needs. And so for the actual, the statutes on point, Chapter 21090 in NRS 115, the use of the term householder, the lack of any other indication limiting specifically the claim of homestead, and also just the general policy articulated in numerous Nevada Supreme Court decisions of broadly construing the exemption statutes, for all of those reasons is why you cannot define simply because the Nevada legislature has enacted statutes specifically with respect to trust property that you could not infer that it meant to specifically exclude property to the extent it was held in an LLC, a corporation, or any other type of artificial entity, especially where, on the specific facts of this case, the LLC was wholly and solely owned and controlled by the debtor and his wife. Why was this property being transferred, what, seven times back and forth? And why did they, just before, just after, why did they transfer it in a way that leads you all to be here? Your Honor, that is an unfortunate situation that perhaps prior counsel could better answer than I. But ultimately, with respect to the final transfer that is really the gravamen of the case, a transfer into, in Nevada at least, I can't speak for other jurisdictions, into a trust is merely to avoid probate. Probate can be an expensive and self-settled trust. It's merely a way to avoid that. What about the LLC form, though? If we know, what is that designed to accomplish? Your Honor, I don't know the answer as to why they would hold it in an LLC. Perhaps at one point, I'm only speculating, but I would gather that to hold it in an LLC, perhaps they intended it on being an investment property that they would lease out to the debtor, remain consistently throughout for a 20-plus year period as residing in this property. But that would be a typical reason I would expect to see a property being transferred into an LLC, is to actually conduct business and also limit the liability of the individuals involved, to the extent the property would be leased out to a third person. That obviously didn't happen. I suspect there are reasons, given what the economy was doing at the time of the transfers, that may have made that impossible. The property may have been upside down. I just don't know, to be perfectly blunt. I can spin out a possible number of reasons why that may have happened. You know, when looking back at the statute, you were saying interest in what? If the answer is interest in the real property, or interest in the amount of, you know, value of the real property, is the answer different? Your Honor, I think ultimately under Greene, no. I think that the answer is, ultimately, you have to look at the actual impact on the bankruptcy estate. Was the estate deprived of something by virtue of the transfer? And in Greene, the answer was, I think, an easier case, because the debtor always consistently personally owned the property, and it was the mere act of change. There was no title transfer. I thought they moved their trailer onto it, or something like that. There were other issues, but that was not central to the decision. The other part of Greene, I think you could reasonably infer from that, is what I believe Your Honor had previously stated, which was, look, there wasn't any real harm here. There wasn't any change of a difference here. If they always lived in the property, they always presumably could be entitled to the homestead. There was no harm. There was no impact on the estate, regardless of how the property was held. It was always exclusively within the control. They always lived there for... So you're saying that this transfer, the one thing that happened after the one, had no effect on the proceedings that we're talking about? Correct. The ability to exempt. It had only an effect on what would have happened had... Just by way of example, the trustees... Sorry. The trustees' position was, well, when it was held in the name of the LLC, it was not exemptable. First of all, that is incorrect, and I believe this essentially involves the transfer from the LLC to the trust was a transfer as exempt property to exempt property. Exempt to exempt means no harm on the estate. It's only, and the trustee must convince you, that it was a transfer from non-exempt to exempt within the 1,215-day period, and that's where the argument breaks down. So, Your Honors, I... What statute are we looking at to arrive at the conclusion that you just told us is the correct one? Where do you get that from? You say it has the same characteristics for our purposes before and after the transfer into the LLC. Where do you get that from? Well, obviously, we have to start with 522P. For example, in the Green case, you did not have to really reach the state law issue there, because it was ultimately a determination of, well, there was no transfer. And what I would say here is there was no transfer within the meaning of 522P. So, ultimately, I think you first start... That's the federal statute. Correct. Does it... What impact does the Nevada homestead statute have on what you're telling me now? Well, I think, as I think my original remark to Your Honor was, or to the panel, was that the BAP really perhaps did not need to go through the homestead analysis to come to its ultimate conclusion, but it did so as kind of a belts and suspenders way of saying, look, not only was there no harm... But you're saying they could have reached the same, they did reach, as an alternative... Yes, I am saying that. ...could reach the same thing, irrespective of the problems of the applicability, if any, of the applicability of the Nevada statute. And you are therefore saying, if you're saying that, then you're saying it really is no reason whatsoever for us to certify this question, because it doesn't matter. Yes, I am. And interestingly enough, Your Honors, this isn't really at issue on appeal, but there's other case law, of course, interpreting what 522P means, and you only have the green case in this circuit, but you have to think about what it means to acquire an interest. For example, what if there's the mere passive appreciation of value of a piece of property, property zoned outside of the 1,215-day period, but the property increases in value, just because you're in a appreciating real estate market? Is that an acquisition of an interest by the debtor? Well, most cases have said, no, that's not a positive affirmative action by the debtor. That's merely passively an incident of ownership. This may be way off base, so I'll ask quickly. What about the fact that they keep paying down the mortgage during this period of time, and therefore, I guess their equity in the home goes up? Is that right? Right. I mean, if you accepted that as an acquisition of interest, say a normal 30-year- There would never be an exemption. Right. You would literally trap every debtor within the ambit of 522P. Unless they stop paying. Well, yeah, unless they stop paying. There's other problems, I'm sure. That would be an absurd result to interpret 522P, that that is an interest. The minimal amount of principal that you paid for the 3.3 years before you filed bankruptcy is an acquisition of an interest. So what's, for you, the classic example of acquiring an interest for purposes of 522P? It's the exact reason the statute was revised in 2005, and that is to close the so-called mansion loophole. There are certain states that literally have unlimited homestead exemptions. Florida. Texas. Alaska. So the prototypical example, perhaps, as to why the statute was enacted was a doctor in New Jersey sees the writing on the wall, a judgment's coming, or perhaps a judgment has already entered, moves to Florida, buys the $3 million piece of property, and says it's totally exempt. Well, Congress- And later gets to sell it and have the $1 million house and $2 million to spend. Exactly. That is the target of the statute, a real acquisition of property within the 3.3 years, the 1,215 days that the statute was meant to address. That is not what we have here, and it's an admirable loophole to try and close by Congress, but if you accept an acquisition of property as meaning normal paydown, passive appreciation of property, I mean, what if the debtor made double payments? Is that an acquisition of an interest? Or is that just a debtor being careful to try and accumulate additional value and perhaps not foreseeing that they may have to file for bankruptcy in the future? You actually get into a very slippery slope that I've seen some other cases get into of what does it mean to acquire an interest with the meaning of 522P, and I think in part perhaps you're dealing with that here. I see I'm out of time. You are out of time. You may sum up in a sentence or so if you wish. I do believe that the 522P grounds and the Nevada state exemption grounds are separate and independent reasons to affirm the BAP's decision. I do believe the BAP perhaps in a sense went the extra mile in reaching the Nevada state law homestead applicability issue, but ultimately the conclusion is the same, and that is one of no harm, no foul. The trustee and the estate were not deprived of anything, regardless of how the debtors engaged in their, may have engaged in their planning for estate planning purposes. The estate ultimately wasn't, the bankruptcy estate was not harmed, and that is exactly what we're trying to do here is figure out whether the debtor's engaging in some kind of bad act whereby 522P should be triggered, and that is literally acquiring an interest and merely passing it from one form to another, but at all times exclusively with the possession, control, and residence of these debtors. Thank you. In the Second Circuit, like the Ninth, the longest sentences I've ever heard are when you're given one more sentence. I apologize. They put Faulkner to shame, you know? Thank you, Your Honor. I love Faulkner. Just very briefly, Your Honor, touching on the point of the harm to the bankruptcy estate, Pelley was essentially taking the position that there cannot be a reasonable dispute as to whether or not a homestead exemption can be claimed in an LLC, and I think if you look at the decision in Savage v. Pearson, particularly this quote by the Nevada Supreme Court that states, we decline to follow the majority of jurisdictions because the homestead statutes in many of those jurisdictions either specifically exempt leases or provide a much broader description of the type of interest that exists. I think, Counsel, he was making a different point, which is that the homestead exemption is not relevant. That is that it's a completely independent question and that under 522P, the only thing to ask is whether there was acquisition of an interest in the way that Congress intended that to be, which is independent of the question of how Nevada law would treat it. Understood, Your Honor, and I think that that goes back to, was it, is it the acquisition of a title in the property that triggers that, and it's the appellant's position that in this case, the estate was deprived of something. The concerns under Section 522 are implicated, and for those reasons, we request that you reverse the decision. Thank you, Counsel. We appreciate the helpful arguments from both of you in this naughty little problem. Thank you. We are adjourned for the afternoon.
judges: Sack, Graber, Murguia